# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
# 𝕗𝕠𝕣 𝕥𝕙𝕖 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 𝕠𝕗 ℂ𝕠𝕝𝕦𝕞𝕓𝕚𝕒 ℂ𝕚𝕣𝕔𝕦𝕚𝕥

———

TOBY STOVER,

Plaintiff-Appellant,

vs.

NATIONAL PARK SERVICE, ET AL.,

Defendants-Appellees.

———

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

———

On Appeal from the U.S. District Court for the District of Columbia
Case No.: 1:24-639 (TJK)
(Hon. Timothy J. Kelly, U.S. District Judge)

———

**Ray L. Flores II**
**11622 El Camino Real Suite 100**
**San Diego, CA 92130**
**Phone  (858) 367-0397**
**Fax:     (888) 336-4037**
**rayfloreslaw@gmail.com**
**CA State Bar No. 233643**
**DC Circuit Bar No.: 64657**

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

### A. Parties

#### 1. Plaintiff-Appellant

a.      Toby Stover is an individual who resides in New York State. The former plaintiffs, Esther Van Der Werf (dec'd), and Elizabeth Dasburg were terminated as and were not plaintiffs in the 1st Amended Complaint.

#### 2. Defendants-Appellees

a.      U.S. Department of the Interior, the National Park Service, Charles F. Sams III, former Director of the National Park Service (Jessica Bowron is the current Acting Director) sued in their official capacity.

### B. Rulings Under Review

Toby Stover appeals the District Court's December 3, 2025 Memorandum Opinion (A 061-066) and Order (A 060) granting the National Park Services, et al., Motion to Dismiss *Toby Stover v. National Park Service* No.: 1:24-cv-00639, 2025 U.S. Dist. LEXIS 254010 (D.D.C. Dec. 3, 2025) (Kelly, T.).

### C. Related Cases

This case is on appeal from the U.S. District Court for the District of Columbia Case No.: 1:24-cv-00639 (TJK). Other than that former proceeding, there are no related cases in this Court or in any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .............. i

    A.    Parties ...................................................................................... i

          1.    Plaintiff-Appellant .................................................... i

          2.    Defendants-Appellees ................................................ i

    B.    Rulings Under Review .............................................................. i

    C.    Related Cases ........................................................................... i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES .................................................................. v

GLOSSARY ........................................................................................... xi

OPENING BRIEF FOR PLAINTIFF-APPELLANT ............................. 1

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED FOR REVIEW ................................................... 2

PERTINENT STATUTES AND REGULATIONS ................................. 3

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF ARGUMENT .............................................................. 5

STANDARD OF REVIEW .................................................................... 9

ARGUMENT ....................................................................................... 10

    A.    The Facts, the APA, and Case Law Confirm Ms. Stover has Standing .............................................................................. 10

          1.    The Facts as Pled ................................................... 10

2. The APA Requires Judicial Review of an Agency's Interpretation of Statutory Authority .........................................11

 a. NPS's No-Cash Policy Violates the APA, 5 U.S.C. § 706(2)(A), in that it is Contrary to Law – the Legal Tender Statute 31 U.S.C. § 5103 .....................................14

 b. This Court has Jurisdiction to Determine Whether NPS's Conduct Violates the APA ....................................15

3. Case Law Confirms Ms. Stover's Standing Under Lujan ........16

 a. Ms. Stover's Harm was Actual.......................................16

  i. The District Court Ruled on Only One-Half of Lujan's Injury Test ................................................19

 b. The Harm is Traceable to NPS's Unlawful Actions ......21

 c. The Harm is Redressable by a Favorable Judicial Decision ..........................................................................21

B. The U.S. Dollar is Legal Tender ...........................................................22

1. The NPS's No-Cash Policy Offends Legal Tender .................23

2. The Internal Revenue Service has a Duty to Accept Cash Payments ...............................................................................26

3. The NPS's No-Cash Policy is Wasteful and Illegal ................26

C. The District Court's Errors in Applying the Facts .............................28

1. This is a Case of First Impression............................................31

2. Ms. Stover's Prospective Harm as Pled Entitles Her to Declaratory and Quasi-Injunctive Relief ..................................34

D. Defendants' Motion to Dismiss under Rule 12(b) Should Have Been denied since Plaintiff Pled a Valid Claim .................................35

1. Ms. Stover Exceeded the Standard to Survive a Motion to Dismiss...................................................................................36

2. The Court Failed to Obey its Duty to Correctly Construe Pleadings ................................................................... 37

E. The Issues Presented for Review Affirm the need for Vacatur and Remand ........................................................................ 38

CONCLUSION ............................................................................................ 38

REQUEST FOR ORAL ARGUMENT ....................................................... 40

CERTIFICATE OF COMPLIANCE ........................................................... 40

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) .................................................................. 11

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ............................................... 37

*Animal Legal Defense Fund, Inc., v. Mike Espy*,
  23 F.3d 496 (D.C. Cir. 1994) ................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................. 35

*Baker v. Carr*,
  369 U.S. 186 (1962) ............................................................. 16, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................. 35, 36

*Cato Inst. v. SEC*,
  4 F.4th 91 (D.C. Cir. 2021) ...................................................... 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................. 17, 18

*Clarke v. Sec. Indus. Ass'n*,
  479 U.S. 388. (1987) ............................................................ 12, 13

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................... 36

*Davis v. United States*,
  18 App. D.C. 468 (1901) .......................................................... 22

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011) ............................................. 35, 37

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ............................................................. 11

*El Paso Nat. Gas Co. v. United States*,
750 F.3d 863 (D.C. Cir. 2014) ............................................................9

*Elec. Privacy Info. Ctr. v. IRS*,
261 F.Supp.3d 1 (D.D.C. 2017) ..........................................................36

*Erdberg v. On Line Info. Servs.*,
2013 U.S. Dist. LEXIS 145760 (N.D. Ala. 1973) ..............................34

*Ex parte Levitt*,
302 U.S. 633 (1937) ...........................................................................16

*Gill v. Whitford*,
585 U.S. 48 (2018) ........................................................................16, 17

*Hikvision USA, Inc. v. FCC*,
97 F.4th 938 (D.C. Cir. 2024) .............................................................13

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
357 U.S. App. D.C. 35 (D.C. Cir. 2003) .............................................37

*La. Public Serv. Com. v. FCC*,
476 U.S. 355 (1986) ...........................................................................15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................16, 18, 30, 38

*Michigan v. EPA*,
268 F.3d 1075 (D.C. Cir. 2001) ..........................................................13

*Milam v. United States*,
524 F.2d 629 (9th Cir. 1974) ..............................................................22

*Picano v. Emerson*,
353 Fed. Appx. 733 (3d Cir. 2009) .....................................................33

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ...........................................................................36

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ...........................................................................17

*Stark v. Wickard*,
321 U.S. 288, 88 L. Ed. 733, 64 S. Ct. 559 (1944)...........................................12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).........................................................................................18

*Tanner-Brown v. Haaland*,
105 F.4th 437 (D.C. Cir. 2024).......................................................................10

*Tenn. Scrap Recyclers Ass'n v. Bredesen*,
556 F.3d 442 (6th Cir. 2009) .....................................................................32, 33

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...................................................................................16, 18

*United States v. Mead Corp.*,
533 U.S. 218 (2000)..........................................................................................13

*Ward v. Joslin*,
105 F. 224 (1st Cir. 1900)................................................................................25

*Warth v. Seldin*,
422 U.S. 490 (1975)..........................................................................................18

*Western Watersheds Project v. Bennett*,
392 F. Supp. 2d 1217 (D. Idaho 2005) ...........................................................14

*Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*,
586 U.S. 9 (2018)..............................................................................................15

*Zukerman v. United States Postal Serv.*,
961 F.3d 431 (D.C. Cir. 2020).........................................................................37

**United States Constitution**

Article III ...............................................................................12, 16, 18, 30
Article III § 2, cl. 1 .............................................................................16

**Federal Statutes**

1 U.S.C.
§ 204(a) ................................................................14

5 U.S.C.
§§ 701–706 .........................................................11
§ 702 .......................................................11, 12, 14
§ 706 ....................................................................3
§ 706(2) .............................................................14
§ 706(2)(A) .................................................4, *passim*
§ 706(2)(C) ....................................................14, 15

28 U.S.C.
§ 1291 .................................................................2
§ 1331 .................................................................1
§ 1343 .................................................................1
§ 1391(e)(1) ......................................................1
§ 2201 .................................................................1
§ 2202 .................................................................1

31 U.S.C.
§ 5103 ......................................................2, passim

42 U.S.C.
§ 1983 ...............................................................33

**Federal Rules of Appellate Procedure**

Rule 4(a) ............................................................2

**Federal Rules of Civil Procedure**

Rule 8(a)(2) .....................................................35
Rule 12 ...............................................................3
Rule 12(b) .......................................................35
Rule 12(b)(1) ....................................9, 10, 36, 37
Rule 12(b)(6) .....................................................9
Rule 12(b)(6) ..............................................35, 36
Rule 57 ...............................................................1

**Online Sources**

*5 U.S. Code § 706 - Scope of review*, Cornell Law School Legal
    Information Institute,
    https://www.law.cornell.edu/uscode/text/5/706#:~:text=To%20the
    %20extent,accordance%20with%20law%3B......................................................6

*2026 Free Entrance Days in the National Parks*, National Park
    Service, Plan Your Visit,
    https://www.nps.gov/planyourvisit/passes.htm#free_entrance_days
    :~:text=2026%20Free%20Entrance,applicable%20nonresident%20
    fees ....................................................................................................22

*Cash Payments to the IRS Over $10,000: Frequently Asked Questions*,
    Internal Revenue Service, IRS.GOV (last updated Feb. 29, 2024),
    https://www.irs.gov/payments/cash-payments-to-the-irs-over-
    10000-frequently-asked-questions......................................................26

*Cashless FAQ*, National Park Service, Lava Beds National Monument
    California, https://www.nps.gov/labe/planyourvisit/cashless-
    faq.htm#:~:text=better%20steward%20of%20our%20visitors%E2
    %80%99%20dollars............................................................................26

*Entrance Fees by Park*, National Park Service, About Us,
    https://www.nps.gov/aboutus/entrance-fee-
    prices.htm?park=&state=&entrancePassRequired=&timedEntry=&
    page=1&parking= .............................................................................23

*Fees & Passes*, National Park Service, Home Of Franklin D Roosevelt
    National Historic Site New York,
    https://www.nps.gov/hofr/planyourvisit/fees.htm#spci_F9355450-
    A310-0CD6-
    8A56AF2A8DBE2705:~:text=All%20visitors%20must,not%20acc
    ept%20cash ........................................................................................24

*Memorandum re Acceptance of Cash Payments at Taxpayer
    Assistance Centers*, Office of Chief Counsel,
    Internal Revenue Service, IRS.GOV,
    https://www.irs.gov/pub/lanoa/pmta01942_7439.pdf.......................26

*Paying in Cash at an IRS Taxpayer Assistance Center? Here's What to Expect at Each Step Along the Way*, IRS Publication 5436-A, Catalog Number 74738R, Department of the Treasury, Internal Revenue Service, IRS.GOV (Aug. 2020), https://www.irs.gov/pub/irs-pdf/p5436aes.pdf ..................................................26

*Payment Cards: Costs and Benefits for Federal Entities*, Government Accountability Office, GAO-25-107298 (Apr. 30, 2025), https://files.gao.gov/reports/GAO-25-107298/index.html?_gl=1*1cw8qjj*_ga*MTk3MDIyMzkxNS4xNzY5MDk5ODM4*_ga_V393SNS3SR*czE3NjkwOTk4MzgkbzEkZzAkdDE3NjkwOTk4MzgkajYwJGwwJGgw#:~:text=More%20than%2085,U.S.%20merchants ...........................................................27

Query Results for "Cashless," National Park Service, https://www.nps.gov/search/?query=Cashless&sitelimit=&affiliate=nps&page=1 .................................................................................24

*Why would the US government ever refuse the US dollar?* The Hill: Thinnes, J., opinion contributor May 31, 2025, https://thehill.com/opinion/finance/5325863-cash-refusal-national-parks-controversy/ ............................................................................10

*Your Fee Dollars at Work*, National Park Service, About us, https://www.nps.gov/aboutus/fees-at-work.htm#:~:text=Of%20the%20more%20than%20four%20hundred%20national%20parks%20in%20the%20National%20Park%20System%2C%20just%20over%20a%20hundred%20parks%20charge%20an%20entrance%20fee ...........................................................23

## Other Authorities

Jonathan R. Siegel, Administrative Conference of the United States, The ACUS Sourcebook of Federal Judicial Review Statutes 42-51 (2022) ..............................................................................14

# GLOSSARY

APA:        Administrative Procedure Act

NPS:        National Park Service

# United States Court of Appeals
# for the District of Columbia Circuit

---

TOBY STOVER,

Plaintiff-Appellant,

vs.

NATIONAL PARK SERVICE, ET AL.,

Defendants-Appellees.

---

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

---

## JURISDICTIONAL STATEMENT

The District Court has original jurisdiction over federal claims against

Defendants-Appellees government agencies pursuant to 28 U.S.C. §§ 1331 and

1343. The District Court has authority to grant the requested declaratory relief

pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, since this case

presents an actual case or controversy within that court's jurisdiction. Venue in the

District Court was proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants

the National Park Service, and the Department of the Interior are governmental

agencies with their principal offices located within the District of Columbia, and officers, or employees of the United States are acting in their official capacity.

The ruling under review is a December 3, 2025 order issued by Judge Timothy J. Kelly ("Judge Kelly") of the United States District Court for the District of Columbia and the accompanying Memorandum Opinion (A 061-066) granting Defendants-Appellees' motion to Dismiss (A 013-026). This decision is the "final appealable" Order (A 060).

Plaintiff-Appellant filed her Notice of Appeal 15 days later, on December 18, 2025 – well within 60 days after entry of judgment if the United States, its agency or officer is a party. (Fed. R. App. P. 4(a).) This Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.     Whether the National Park Service's no-cash policy at approximately thirty venues unlawfully demonetizes U.S. currency and therefore should be declared unlawful and set aside for violating the Administrative Procedure Act for being contrary to law (31 U.S.C. § 5103 Legal Tender Statute).

II.    The District Court dismissed Toby Stover's case against the National Park Service for lack of standing by characterizing her tendering the entrance fee in U.S. currency as self-inflicted harm of her own making that was not a 'real' injury. By finding that she will not suffer an imminent injury because she alleges that she will

not visit the Home of Franklin D. Roosevelt National Historic Site in Hyde Park,

New York ("Hyde Park"), an NPS site, so long as the NPS's cashless policy

remains in place. Did the Court err?

## PERTINENT STATUTES AND REGULATIONS

31 U.S. Code § 5103 - Legal tender
United States coins and currency (including Federal reserve notes and circulating
notes of Federal reserve banks and national banks) are legal tender for all debts,
public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for
debts.

5 U.S. Code § 706 - Scope of review (in pertinent part)
To the extent necessary to decision and when presented, the reviewing court shall
decide all relevant questions of law, interpret constitutional and statutory
provisions, and determine the meaning or applicability of the terms of an agency
action. The reviewing court shall—
(2) hold unlawful and set aside agency action, findings, and conclusions found to
be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
with law.

Fed R. Civ. P. 12 (in pertinent part)
(b) How to Present Defenses. Every defense to a claim for relief in any pleading
must be asserted in the responsive pleading if one is required. But a party may
assert the following defenses by motion: (1) lack of subject-matter jurisdiction.

## STATEMENT OF THE CASE

Toby Stover sued the National Park Service, its Director in his official

capacity, and the Department of the Interior (collectively "NPS"), alleging the

NPS's ongoing no-cash policy at dozens of its national parks violates the

Administrative Procedure Act (APA),(5 U.S.C. § 706(2)(A)), as it offends the Legal Tender Statute (31 U.S.C. § 5103).

The NPS refused to allow Ms. Stover to enter the Home of Franklin D. Roosevelt National Historic Site in Hyde Park, New York ("Hyde Park"), an NPS site after she tendered cash for the entry fee. Toby Stover's First Amended Complaint (Am. Compl.) (A 001-012) asked the District Court to declare that the NPS's no-cash policy is in violation of the Administrative Procedure Act for being contrary to the Legal Tender Statute and therefore must be set aside. Defendants moved to dismiss. (A 013-026.)

Without oral argument, Judge Kelly ruled that, despite Stover tendering cash, she "has not alleged that she cannot pay the entrance fee electronically," leading to the Court's conclusion that, "any injury flowing from the alleged NPS policy would not be sufficiently concrete to satisfy standing." (A 065.) The Court opined that tendering U.S. currency caused an injury of Ms. Stover's "own making," resulting in "self-inflicted harm." (A 066 n. 1.)

Even though Ms. Stover suffered an actual injury in being denied entry, the Court also opined, that because she will not visit Hyde Park so long as its no-cash policy remains in place – ignoring that she wants to visit and would again be denied admission with cash in hand – "she will not suffer an imminent injury." (A 064.)

On December 3, 2025, Judge Kelly granted Defendants' motion, dismissed the case, and ordered the Clerk of Court to close the case. (A 060.)

On December 18, 2025, Toby Stover filed a Notice of Appeal with the District Court seeking review and reversal of the District Court's ruling.

## SUMMARY OF ARGUMENT

The introductory paragraph to Judge Kelly's Memorandum Opinion (A-061) demonstrates that the Court predetermined that Ms. Stover needed to tender an electronic payment or explain why it was impossible to pay electronically. Without offering reasoning or support in the law, the District Court pre-judged that the NPS's no-cash policy was proper. It was a foregone conclusion that her failure to capitulate was a self-inflicted injury, and she would lack standing.

By dismissing Ms. Stover's case on standing, the District Court avoided ruling substantively on the NPS's no-cash policy, a policy with no legal support. With that ruling, the District Court summarily demonetized the U.S. Dollar on federal property without justification.

With the District Court's error in logic corrected and NPS's policy reviewed, the illegality of the NPS's no-cash policy that caused Ms. Stover's concrete, ongoing, and actual harm will surely confer standing.

NPS's no-cash policy begs a commonsense question – does the U.S. Government have the right to refuse to accept the currency it demands we use? The commonsense answer is, obviously not.

The NPS's no-cash policy offends U.S. law by redefining legal tender at approximately thirty of its venues. The District Court demonetized U.S. currency when it determined that electronic payment completely replaces U.S. currency at those venues. Hyde Park, without any remorse, refuses entry to would-be visitors exclusively offering U.S. Dollars to satisfy its entrance fee. Until now, cash-tendering visitors had no recourse. To arrive at its decision favoring the NPS, the District Court relied on questionable interpretations of the facts, a brand new definition of legal tender, and a notion that federal agencies need not obey the law. Moreover, in order to support its dismissal order, the District Court skipped Congress's requirement that courts "shall decide all relevant questions of law" to review and set aside unlawful agency actions.[1]

The facts of the incident that led to filing suit are straightforward. Ms. Stover visited Hyde Park and tendered cash for the entry fee. An NPS employee told her, "we don't take cash." (A 006 ¶20.)  The Hyde Park entrance fee is still only

---

[1] 5 U.S. Code § 706 - *Scope of review*, Cornell Law School Legal Information Institute, https://www.law.cornell.edu/uscode/text/5/706#:~:text=To%20the%20extent,accordance%20with%20law%3B.

6

payable by "Credit/Debit only" according to its website. *Id.* ¶22. Ms. Stover's U.S. currency is utterly worthless at Hyde Park to this day.

Even though Ms. Stover seeks the freedom to visit Hyde Park "whenever she wants" with the correct denomination of the U.S. Dollar in hand, she will not again attempt travel to and to enter Hyde Park – an act of futility – "if she continues to be denied her right to tender anything other than legal U.S. Currency." *Id.* ¶22. Rather than recognizing the continuing, actual harm, the District Court dismissed her case after it mistook her desire to tender the entrance fee again in cash as an admission that "she would not suffer an imminent injury." (A 064.) The District Court determined that her insistence on paying in U.S. currency is a "principled objection" that results in an injury "of her own making" causing "self-inflicted harm." (A 065 nn.1, 2.)

Based on *principles of law*, however, the NPS's no-cash policy is illegal. Even though the Administrative Procedure Act (5 U.S.C. § 706(2)(A)) requires review to set aside unlawful agency action, the District Court avoided reaching this issue by dismissing based on standing.

The District Court's decision and order addressed only standing and, even then, did so by misapprehending the facts. When the record is fully examined, it is clear that the facts support not only standing but also this Court's vacatur of the

District Court's dismissal, and remand to the District Court for appropriate application of facts and law.

31 U.S.C. § 5103 establishes United States coins and currency as legal tender for all debts, public charges, taxes, and dues. Even though our government and its agencies are bound to accept U.S. currency, the NPS replaces U.S. currency with surrogate electronic payment.

Although **no** U.S. law allows the NPS to exclusively define legal tender as electronic payment, the District Court pretended or presumed such a law existed when it ruled that Ms. Stover brought the harm upon herself when she tendered U.S. currency at Hyde Park.

This Court must not permit any government agency or District Court to designate a replacement for U.S. currency. The District Court's assumption that electronic payment is the new U.S. currency is reversible error.

The District Court avoided deciding the substantive issues of the illegality of the NPS's no-cash policy by blaming the victim. Long after the NPS robbed her of the value of her money in January 2024, the same policy that precludes her entry with cash – past, present, and future – remains in place at Hyde Park. The NPS employee's turning her away resulted in concrete injury and actual and continuing harm as long as Hyde Park's no-cash policy remains in place.

Even though an actual injury already took place, the District Court surmised that standing could have been achieved if Ms. Stover had set a date certain for her to return with cash in hand. But the District Court already concluded that trying to pay with the U.S. Dollar is a self-inflicted injury. The District Court engages in circular logic.

This is a case of first impression. Existing case law on legal tender does not address a U.S. Government defendant.

The District Court's 'discussion' is just window dressing that spells out the components of the law, but does not analyze. Ms. Stover alleged a particularized injury; she showed up to Hyde Park and was turned away as a result of the NPS's no-cash policy. The injury is one she suffered personally. Vacating the District Court's dismissal would restore her rights.

## STANDARD OF REVIEW

The lower court dismissed Ms. Stover's case under *Fed. R. Civ. P. 12(b)(1)*. The standard of review under Rule 12(b)(1) is *de novo. El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 868 (D.C. Cir. 2014) (The United States Court of Appeals for the District of Columbia Circuit reviews de novo the district court's dismissal of claims for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a claim under Fed. R. Civ. P. 12(b)(6)). The D.C. Circuit "first consider[s] the Rule 12(b)(1) grounds for dismissal, if any, as subject

matter jurisdiction and presents a threshold question" "with respect to each claim," *Id*. (citations omitted). The court must draw all reasonable inferences in favor of the plaintiff and must "accept as true all of the factual allegations contained in the complaint" in deciding a Rule 12(b)(1) motion.

This Court reviews dismissals for lack of standing *de novo*. (See *Tanner-Brown v. Haaland*, 105 F.4th 437, 443 (D.C. Cir. 2024)). "In doing so, we assume the truth of all material factual allegations in [the] complaint and construe the complaint liberally, granting [plaintiffs] the benefit of all reasonable inferences that can be derived from the facts alleged." *Cato Inst. v. SEC*, 4 F.4th 91, 94 (D.C. Cir. 2021).

## ARGUMENT

*Will history remember Toby Stover vs. U.S. National Park Service as the case that helped rescue the dollar's dignity, or as the beginning of its quiet demise? In a democracy built on laws and liberty, the answer matters.*[2]

### A. The Facts, the APA, and Case Law Confirm Ms. Stover has Standing

#### 1. The Facts as Pled

According to the First Amended Complaint (J 006 ¶20):

---

[2] *Why would the US government ever refuse the US dollar?* The Hill: Thinnes, J., opinion contributor May 31, 2025, https://thehill.com/opinion/finance/5325863-cash-refusal-national-parks-controversy/.

Plaintiff Toby Stover drove to the NPS entrance at the FDR Home in Hyde Park, New York on January 26, 2024. At 3 p.m., she approached the counter. A man in an NPS uniform welcomed her. He asked her if she would like to take the 3:30 tour. She replied that she would. He asked for $10 which she attempted to hand to him. He affirmed "we don't take cash" and would not permit her to enter. She was refused entry by a NPS employee even though she tendered U.S. Currency.

Hyde Park's no-cash policy remains in place. Ms. Stover wants to have her

rights vindicated:

Toby Stover still wants to visit Hyde Park whenever she wants but will not do so if she continues to be denied her right to tender anything other than legal U.S. Currency. According to its website, entrance is still only payable by "Credit/Debit only" by tendering cash, and cash only.

*Id.* at ¶22.

### 2. The APA Requires Judicial Review of an Agency's Interpretation of Statutory Authority

In 1946, Congress enacted the Administrative Procedure Act (APA). The

Act allowed plaintiffs to have standing to challenge the action of an administrative

agency if they had suffered a "legal wrong." "The APA's judicial review

provisions, 5 U.S.C. §§ 701–706, establish a 'general presumption' that final

agency action is subject to judicial review." *Dep't of Homeland Sec. v. Regents of*

*Univ. of Cal*., 140 S. Ct. 1891, 1905 (2020) ("The APA establishes a 'basic

presumption of judicial review [for] one 'suffering legal wrong because of agency

action.'") (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967)

(quoting 5 U.S.C. § 702)).

Congress empowers administrative agencies to carry on governmental activities; the power of those agencies is circumscribed by the authority granted. Courts review actions of administrative bodies only to the extent necessary to protect justiciable individual rights against administrative action that are beyond the granted powers. . ." "Under Article III, Congress established courts to adjudicate cases and controversies as to claims of infringement of individual rights whether by unlawful action of private persons or by the exertion of unauthorized administrative power." *Stark v. Wickard*, 321 U.S. 288, 309-310, 88 L. Ed. 733, 64 S. Ct. 559 (1944) (footnote omitted).

A plaintiff may secure judicial review under the APA if he can demonstrate that the injuries he asserts fall within the "zone of interests" sought to be protected by a relevant statute (*Animal Legal Defense Fund, Inc., v. Mike Espy*, 23 F.3d 496, 502 (D.C. Cir. 1994) (internal citations omitted)). "The principal cases in which the "zone of interest" test has been applied are those involving claims under the APA, and the test is most usefully understood as a gloss on the meaning of [5 U.S.C.] § 702. While inquiries into reviewability or prudential standing in other contexts may bear some resemblance to a "zone of interest" inquiry under the APA, it is not a test of universal application." *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400. (1987). "The test precludes review of administrative action if the particular interest asserted is "so marginally related to or inconsistent with the

purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."" *Id.* at 399. Here, Ms. Stover was physically turned away by an NPS employee for tendering U.S. currency.

The Administrative Procedure Act (5 U.S.C. § 706(2)(A)) provides (in pertinent part):

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall— (2) hold unlawful and set aside agency action . . . not in accordance with law.

Ms. Stover suffers a *legal wrong* since the NPS's no-cash policy is contrary to law. Judicial review centers on "whether Congress has delegated to the agency the legal authority to take the action that is under dispute." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2000)).

NPS cannot cite congressional authority to require surrogate payment in lieu of U.S. legal tender.

> In the absence of statutory authorization for its act, an agency's action is plainly contrary to law and cannot stand. An agency can neither adopt regulations contrary to statute, nor exercise powers not delegated to it by Congress.

*Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 940 (D.C. Cir. 2024).

"[A]gency action…'can be set aside as contrary to law pursuant to 5 USCS § 706(2).'" *Western Watersheds Project v. Bennett*, 392 F. Supp. 2d 1217, 1227 (D. Idaho 2005) (internal citation omitted).

### a. NPS's No-Cash Policy Violates the APA, *5 U.S.C. § 706(2)(A),* in that it is Contrary to Law – the Legal Tender Statute *31 U.S.C. § 5103*

[W]henever titles of [the U.S.] Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

1 U.S.C. § 204(a).

Agencies are authorized by Congress to exercise their delegated authority that affects individuals and the public at large. The APA provides a statutory vehicle for challenging federal agency actions[3] since it authorizes courts to "set aside" agency action that is "not in accordance with law" (5 U.S.C. § 706(2)(A), (C)) to ensure an agency's compliance with the law. "The Administrative Procedure Act creates a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" (quoting 5 U.S.C. § 702). As we explained recently, "legal lapses and violations occur, and especially so when they have no consequence. That is why the Supreme Court has so long applied a strong presumption favoring judicial review of administrative action. (internal citations

---

[3] Jonathan R. Siegel, Administrative Conference of the United States, The ACUS Sourcebook of Federal Judicial Review Statutes 42–51 (2022).

omitted)." " *Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 586 U.S. 9,

22-23 (2018).

> United States coins and currency (including Federal reserve notes and
> circulating notes of Federal reserve banks and national banks) are
> legal tender for all debts, public charges, taxes, and dues. Foreign gold
> or silver coins are not legal tender for debts.

31 U.S. Code § 5103 - Legal tender.

### b. This Court has Jurisdiction to Determine Whether NPS's Conduct Violates the APA

> To the extent necessary to decision and when presented, the reviewing
> court shall decide all relevant questions of law, interpret constitutional
> and statutory provisions, and determine the meaning or applicability
> of the terms of an agency action. The reviewing court shall— (2) hold
> unlawful and set aside agency action . . . not in accordance with law.

 5 U.S.C. § 706(2)(A): (A 008 ¶29.)

"[A]n agency literally has no power to act," according to the Supreme Court,

"unless and until Congress confers power upon it." *La. Public Serv. Com. v. FCC*,

476 U.S. 355, 374 (1986). Congress directs courts to "decide all relevant questions

of law" and to "interpret constitutional and statutory provisions." 5 U.S.C.

§ 706(2)(A),(C).

This Court has the authority to review and set aside NPS's unlawful cashless

program since the NPS cannot continue enforcing a policy that is contrary to law.

### 3. Case Law Confirms Ms. Stover's Standing Under Lujan

Federal courts may only resolve "[c]ases" and "[c]ontroversies." U.S. Const. art. III § 2, cl. 1. Article III cases that are "appropriately resolved through the judicial process" are those "of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Under Lujan, standing comprises (1) an injury-in-fact that is (2) traceable to the defendant's conduct and (3) redressable by a favorable decision of the court. *Id*. at 560–61. The plaintiff's injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A plaintiff lacks standing if he seeks to vindicate merely a "general interest common to all members of the public." *Lujan*, 504 U.S. at 575 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). The injury must demonstrate "a personal stake in the outcome of the controversy." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

### a. Ms. Stover's Harm was Actual

Ms. Stover's injury is "concrete, particularized, and actual." *TransUnion LLC v. Ramirez*, 594 U.S. at 423. Ms. Stover seeks to vindicate a personal injury that is much more than a "general interest common to all members of the public." *Lujan*, 504 U.S. at 575 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). Ms. Stover's injury is concrete since NPS denied her entry at Hyde Park, and it is

'particularized' since she was harmed. Her injury demonstrates "a personal stake in the outcome of the controversy." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Baker*, 369 U.S. at 204). Since the NPS demonetizes Ms. Stover's U.S. Currency at approximately 30 venues, she seeks to vindicate the wrong the NPS's no-cash policy inflicts upon her.

Ms. Stover was already denied entry at Hyde Park, and the harm of NPS zeroing out the value of her U.S. currency on U.S. Government property is actual and it is continuing. Her case is distinguishable from *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), where the plaintiff alleged incorrect information on a people search engine was speculative, attenuated, and implausible. The Supreme Court held "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 342 (Alito, J.)

Ms. Stover's harm not only happened, but occurs any time she sets foot on any one of NPS's no-cash venues. Her harm is sufficiently imminent and substantial. A material risk of future harm can satisfy the concrete-harm requirement. *Spokeo Id.,* cited a Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) that "recognized, a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm

from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." (internal citations omitted) *TransUnion LLC v. Ramirez*, 594 U.S. at 435-36.

Here, the NPS's offense of demonetizing Ms. Stover's currency on federal property continues.

A "substantial risk" of future harm exists that is more than a "possible future injury" or even an "objectively reasonable likelihood" of future injury since the NPS website displays credit/debit only. *Clapper,* 568 U.S. at 409–10, 414 n.5 (emphasis removed). With her U.S. Dollars in hand, Ms. Stover still cannot visit any other cashless park either. Ms. Stover satisfies the injury-in-fact requirement, since she has a "personal stake in the outcome of the controversy." *Warth* v. *Seldin*, 422 U.S. 490, 498, (1975) (internal quotation marks omitted).

Her already being turned away from Hyde Park is an injury sufficient to satisfy Article III as it is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (some internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Clapper,* 568 U. S. at 409, 414, n.5, 133 S. Ct. 1138, 1150) (emphasis deleted, internal quotation marks omitted). *Id.* Here, Ms. Stover still may not enter with cash in hand. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

### i. The District Court Ruled on Only One-Half of Lujan's Injury Test

One of Lujan's requirements is that harm is either actual or imminent. By assuming that NPS's no-cash policy was legal, the District Court pre-judged that there was no actual harm. By doing so, the District Court all but assured that Ms. Stover would never be able to enter by tendering cash. The District Court bent the standard so that its ruling could align with *Lujan*.

Ms. Stover was turned away from Hyde Park. Her suit was based on the Administrative Procedure Act, and the Legal Tender Statute. The District Court automatically, without justification, determined her harm was a product of her bad choices since she did not tender an electronic payment. Rather than acknowledge the real harm, the District Court opined that her failure to follow the rules was to blame.

The District Court's error – skipping review of *actual* injury – is revealed in its ruling in its memorandum: First, "Stover's allegation does not establish an *imminent* injury." (A 064.)

Even though an actual injury already took place in January 2024, the District Court ignored the injury Ms. Stover suffered at the hands of the NPS to assure it could dismiss on standing. To find no actual harm, the District Court found it necessary to massage the law by unfairly characterizing Ms. Stover's injury as self-inflicted. The District Court needed to assume the NPS's no-cash policy was

lawful, and then find a way to get around having to justify its assumption. The District Court accomplished this, and, voila, Ms. Stover lacked standing.

The District Court doubled down on its failure to recognize Ms. Stover's actual injury by switching to the alternative "imminent" injury standard as if it is the only method of determining injury when an actual injury suffices. Basing its ruling on whether harm is imminent is *irrelevant* when *actual* harm already occurred.

The District Court asserted that Ms. Stover's unwillingness to return to Hyde Park while NPS's no-cash policy remains in place is "best characterized as removing all doubt that she will not suffer an imminent injury as proof of her intent not to return." (A 006 ¶22.) The District Court engaged in this questionable analysis since the actual harm already occurred. Further, her inability to set a date certain to return was secured by a favorable ruling for the NPS. The District Court turned the facts, the law, and logic itself on its head: "Stover does not allege that any injury to her is imminent, or that she has any plans to visit Hyde Park, or any other similar NPS site." The District Court fails to remember that she cannot return with cash in hand and conveniently forgets that the actual injury she already suffered satisfied *Lujan*. Nowhere in the District Court's analysis is *actual* injury discussed.

### b. The Harm is Traceable to NPS's Unlawful Actions

Is insistence on paying in U.S. Dollars merely a principled objection? Once NPS refused the currency, it violated the law that an agency has no right to offend. When Ms. Stover, a member of the public, was refused entrance merely because she tendered a U.S. Dollar, she suffered concrete harm traceable to NPS's no-cash policy. She cannot go back as long as the NPS violates the law. Even if she were to go back and pay with a credit card, she is still harmed: The cash in her pocketbook is worthless on Hyde Park property. That harm continues. It is a direct result of NPS's no-cash policy.

The minute she walked onto federal property owned for the public good and was told she needed to use a private payment, her U.S. currency became worthless. Money is a unit of account, medium of exchange, and a store of value. The moment she walked on the property, it lost all its value. Anytime she goes back, its status as official U.S. currency is void.

### c. The Harm is Redressable by a Favorable Judicial Decision

Ms. Stover's injury is redressable since this Court has the power to prevent Ms. Stover's currency from continuing to be devalued while NPS's offense of demonetizing Ms. Stover's currency on federal property continues. The freedom her money gave her before NPS's no-cash policy was enacted would be restored and she would no longer be denied entrance to Hyde Park or other NPS's no-cash

sites on days when an entrance fee is charged.[4] If NPS's no-cash policy is

rightfully dissolved, Ms. Stover's rights will be vindicated.

### B. The U.S. Dollar is Legal Tender

The U.S. Constitution gives Congress, not the banks, and most certainly not

the NPS, the authority to define lawful money. The Ninth Circuit explained:

> "[U]nder the power to borrow money on the credit of the United
> States, and to issue circulating notes…Congress is authorized to
> establish a national currency, either in coin or in paper, and to make
> that currency lawful money for all purposes, as regards the national
> government or private individuals…."

*Milam v. United States*, 524 F.2d 629, 630 (9th Cir. 1974) (in pertinent part).

The U.S. Dollar is "universally known and understood as the national

currency and money of the United States." *Davis v. United States*, 18 App. D.C.

468, 489 (1901).  31 U.S.C. § 5103 provides: "United States coins and

currency…are legal tender for all debts, public charges, taxes, and dues..." The

NPS no-cash policy adds an asterisk on U.S. Currency after the word dues*: except

on certain U.S. Government properties which unilaterally determine to reject legal

tender.

---

[4] *2026 Free Entrance Days in the National Parks*, National Park Service, Plan
Your Visit,
https://www.nps.gov/planyourvisit/passes.htm#free_entrance_days:~:text=2026%2
0Free%20Entrance,applicable%20nonresident%20fees.

The District Court's dismissal in this case adds surplusage to the Legal Tender Statute: The District Court contrived that proving a lack of access to a credit card or ATM card determines whether U.S. currency is legal tender. Our government's legal tender system, however, is not contingent upon one's ability, or inability, to secure a third-party electronic payment method – up until the District Court's erroneous ruling, that is.

Ms. Stover needs no excuse to tender U.S. currency. Any intimation that she must be unbanked, or be without means to pay electronically, is just one more aspect of a *corrosive ideology* that plagues the NPS, and the U.S. Department of the Interior. The overarching flaw in the District Court's thinking is that the U.S. Government is *not* obliged to accept the money it prints.

### 1.    The NPS's No-Cash Policy Offends Legal Tender

The National Park Service operates 475 parks.[5] Just over 100 charge[6] an

---

[5] *Entrance Fees by Park*, National Park Service, About Us, https://www.nps.gov/aboutus/entrance-fee-prices.htm?park=&state=&entrancePassRequired=&timedEntry=&page=1&parking=

[6] *Your Fee Dollars at Work*, National Park Service, About us, https://www.nps.gov/aboutus/fees-at-work.htm#:~:text=Of%20the%20more%20than%20four%20hundred%20national%20parks%20in%20the%20National%20Park%20System%2C%20just%20over%20a%20hundred%20parks%20charge%20an%20entrance%20fee.

entrance fee. Hyde Park's entrance fee currently is $15. The website[7] tells those who want to visit Hyde Park that they should "Plan to go cashless[.] This park does not accept cash." There are approximately thirty NPS venues that similarly have adopted the NPS's no-cash policy.

A search of the word cashless on the NPS's website[8] returns 121 results referencing scores of National Parks that are either currently cashless or are transitioning. All those parks and sites that require an entrance fee but do not accept cash – not only Hyde Park – remain off limits to Ms. Stover or others who assert their lawful right to tender cash to enter NPS venues.

Even though Congress declared a single, uniform currency, NPS's illegal no-cash policy boldly replaces our national currency with commercial, third-party, surrogate payment at nearly thirty venues. Hyde Park, the NPS, and the District Court do not appear to care that there is no U.S. law supplanting legal tender with electronic payments.

As explained in Plaintiff's Opposition to Defendants' Motion to Dismiss (A 038-039): Under 31 U.S.C. § 5103, U.S. currency is legal tender for *dues*, which

---

[7] *Fees & Passes*, National Park Service, Home Of Franklin D Roosevelt National Historic Site New York,
https://www.nps.gov/hofr/planyourvisit/fees.htm#spci_F9355450-A310-0CD6-8A56AF2A8DBE2705:~:text=All%20visitors%20must,not%20accept%20cash.

[8] Query Results for "Cashless," National Park Service,
https://www.nps.gov/search/?query=Cashless&sitelimit=&affiliate=nps&page=1.

include national park entrance fees. To paraphrase, the court in *Ward v. Joslin*, 105 F. 224, 227 (1st Cir. 1900) referred to Bouvier's Law Dictionary to ascertain the meaning of the word "Due." The word may signify what ought to be paid – what may be demanded. The 1st Circuit determined that the term "Dues" is a broader category than debts.

Stating the obvious, what the U.S. Government puts into circulation as legal tender is what it, in turn, must accept as legal tender. Like dozens of other NPS parks and sites, Hyde Park continues to boldly announce on its website that cash is not accepted. Ms. Stover's exercise of her right to tender to her own government its own currency – only to be rejected – defies the law and strains logic. As such, NPS's contrived declaration that electronic payment is the new legal tender should not have been embraced by the District Court lest the government inch closer to replacing electronic payment for U.S. currency from here on in.

The NPS lacks the power to make electronic payment or anything else a lawful substitute for legal tender. The U.S. Legal Tender is a fundamental part of an organized society, designed to protect Ms. Stover and the rest of the U.S. population. But, confidence in our U.S. money erodes when a District Court allows a government agency, the gatekeeper of our national parks, to make up its own rules and nullify the Legal Tender Statute.

## 2. The Internal Revenue Service has a Duty to Accept Cash Payments

The Office of the Chief Counsel for the Internal Revenue Service affirms the U.S. Government agency's duty: "[Taxpayer Assistance Centers] are required to accept cash from taxpayers pursuant to 31 U.S.C. § 5103."[9] TACs also advise taxpayers to "bundle your cash in the highest denominations possible."[10] "The IRS can only accept [cash] payments in U.S. currency."[11]

## 3. The NPS's No-Cash Policy is Wasteful and Illegal

Although the NPS claims publicly that its no-cash policy allows it to "be a better steward of our visitors' dollars,"[12] it stewards significant fees to credit card companies for processing electronic payments. According to the Government

---

[9] *Memorandum re Acceptance of Cash Payments at Taxpayer Assistance Centers*, Office of Chief Counsel, Internal Revenue Service, IRS.GOV, https://www.irs.gov/pub/lanoa/pmta01942_7439.pdf.

[10] *Paying in Cash at an IRS Taxpayer Assistance Center? Here's What to Expect at Each Step Along the Way*, IRS Publication 5436-A, Catalog Number 74738R, Department of the Treasury, Internal Revenue Service, IRS.GOV (Aug. 2020), https://www.irs.gov/pub/irs-pdf/p5436aes.pdf.

[11] *Cash Payments to the IRS Over $10,000: Frequently Asked Questions*, Internal Revenue Service, IRS.GOV (last updated Feb. 29, 2024), https://www.irs.gov/payments/cash-payments-to-the-irs-over-10000-frequently-asked-questions.

[12] *Cashless FAQ*, National Park Service, Lava Beds National Monument California, https://www.nps.gov/labe/planyourvisit/cashless-faq.htm#:~:text=better%20steward%20of%20our%20visitors%E2%80%99%20dollars.

Accountability Office, the U.S. Government paid[13] $1.06 on average per transaction, totaling hundreds of billions of dollars of the people's money in fees to card issuers, networks, and companies that facilitated the transactions in fiscal year 2023. Additionally, consumers also may pay transaction fees, depending on the type of electronic payment they use.

As pled: The NPS's Claim of efficiency, security, and cost savings, even if true, is no justification for the NPS to violate the law:

> NPS' violation of federal law cannot be overlooked in favor of any purported benefit NPS Cashless could hope to achieve such as reducing logistics of handling cash collected. Moreover, there is an increased cost to the NPS in going cashless, such as additional processing fees that will be borne by NPS and by visitors who ultimately fund the Federal Government through taxes, in addition to personal surcharges and bank fees visitors may incur under NPS Cashless policy.

(A 003.)

The NPS incurs expenses for performing services such as hoisting the American Flag, cleaning washrooms, or providing handicap access. Similarly, accepting U.S. currency is one more service the NPS is obligated to perform without exception, until Congress changes the law.

---

[13] *Payment Cards: Costs and Benefits for Federal Entities*, Government Accountability Office, GAO-25-107298 (Apr. 30, 2025), https://files.gao.gov/reports/GAO-25-107298/index.html?_gl=1*1cw8qjj*_ga*MTk3MDIyMzkxNS4xNzY5MDk5ODM4*_ga_V393SNS3SR*czE3NjkwOTk4MzgkbzEkZzAkdDE3NjkwOTk4MzgkajYwJGwwJGgw#:~:text=More%20than%2085,U.S.%20merchants.

### C.    The District Court's Errors in Applying the Facts

The District Court dismissed this case on standing grounds, never reaching the merits. Even though the District Court never ruled on the merits, its opinion is clear that Judge Kelly had *de facto* concluded that the NPS's no-cash policy is valid by finding that Ms. Stover lacked standing because she failed to tender an electronic payment.

The District Court ruled:

> Even if Stover had plausibly alleged that she planned to return to Hyde Park or any other similar NPS site, any injury flowing from the alleged NPS policy would not be sufficiently concrete to satisfy standing. That is so because Stover has not alleged that she cannot pay the entrance fee electronically.

(A 065.)

The District Court thus presumed the validity of NPS's electronic payment requirement. If this were not the underlying truth behind its decision, the District Court would have found that she had standing, and would have regarded her tendering U.S. currency as a lawful offer. Instead the District Court avoided its obligation under the APA to review the NPS's no-cash policy by dismissing the First Amended Complaint based on standing.

The District Court created a false construct when it, absent any analysis, blatantly endorsed the NPS's no-cash policy. By Ms. Stover's failure to give in to an unlawful policy, even though it resulted in an actual injury of her being turned

away, the District Court predetermined the NPS's forbidding her admittance was an injury of Ms. Stover's "own making." (A 065 n.1.) "[H]er principled objection to paying electronically, without anything preventing her from doing so, "is not a 'real' injury under standing's concreteness requirement." (A 065.)

By determining that her refusal to comply resulted in her lack of standing, the District Court allowed the illegal policy to remain in place. Without any examination or discussion in its memorandum, the District Court enforced an unlawful agency policy. This is reversible error.

When Hyde Park denied Ms. Stover admittance on January 26, 2024, for the sole reason that she tendered cash, the NPS turned her U.S. currency into a worthless piece of paper. The power of her dollar was and remains nullified at any time she sets foot on Hyde Park or any of the NPS's no-cash federal properties. Contrary to the District Court's opinion, the harm she was subjected to is concrete, continual (therefore imminent), and actual.

The Court ruled: "Whatever Stover "wants" to do is of no moment without any concrete plans on her part to visit Hyde Park again and try to pay the entrance fee in cash." *Id.* "Thus, because she has not alleged that she will suffer an imminent injury, she has not alleged an injury in fact required for Article III standing." (A 064-065.)

The District Court then misinterpreted *Lujan*, finding: "At best, she alleges the kind of "some day" intention to return there, without any description of concrete plans, that the Supreme Court found insufficient in *Lujan*. 504 U.S. at 563–64." (A 064.) The District Court based its conclusion on the concept of someday as if she were not already injured and the District Court had not already precluded her from going with cash in hand.

To have conveniently erased the past harm by categorizing it as self-inflicted and not a real injury allowed the District Court to vigorously examine only a future injury. By assuming NPS's no-cash policy is fair, the District Court put its thumb on the scale and allowed the policy to remain in place.

The District Court's dismissing Ms. Stover's *actual injury* out of hand sabotages Ms. Stover's future injury – erased by rubber-stamping NPS's no-cash policy.

The District Court summarily condoned NPS's no-cash policy, and tossed her case, to conveniently answer the very question this case turns on: When may she return with cash in hand? Never.

Due to the District Court's interpretation, the full power of Ms. Stover's U.S. currency continues to be diminished by the U.S. Government itself. Her money still cannot be used to enter Hyde Park or any other no-cash venue.

The District Court asserted that Ms. Stover lacked standing because she did not set a date certain for her return. With NPS's no-cash policy still firmly in place, the District Court laid the trap since tendering cash, once again, will not result in her admission to Hyde Park. Since the Court already determined that tendering U.S. currency is self-inflicted harm, her doing this again would be a fool's errand. With Hyde Park's no-cash policy still firmly in place, her returning and attempting to pay in cash would only reinforce the District Court's impression that Ms. Stover's continued insistence on paying cash flaunts the rules – rules that are, according to the District Court's unspoken reasoning, *de facto* lawful. The District Court's error in logic is its assumption that Ms. Stover must be denied entrance, over and over, in order for her harm to be imminent when actual harm already occurred and when the NPS's no-cash policy clearly remains in place.

### 1.    This is a Case of First Impression

As demonstrated below, this is a case of first impression. Two federal agencies have determined that the U.S. Dollar is not legal tender and the District Court has, in effect, blessed that decision. Because of this unique factual pattern, all prior case law, including that relied upon by NPS and the Department of the Interior, is inapposite.  According to the Federal Reserve, "Private businesses are free to develop their own policies on whether to accept cash unless there is a state law that says otherwise."

Ms. Stover argued in her Opposition to NPS's Motion to Dismiss (A 041-042) that existing case law that concerns private or municipal entities is not governed by the APA or 31 U.S.C. § 5103. Even though 31 U.S.C. § 5103 alone does not provide a private right of action, the APA confers standing to those who have suffered a legal wrong because of unlawful agency action.

Even though a search of the Legal Tender Statute returns many cases, this action is distinguishable since a U.S. Government agency is the defendant. No U.S. Government agency has ever been sued for denying its own money, and no U.S. Government agency has ever defended its actions under the APA for a violation of the Legal Tender Statute. This is a case of first impression.

One case routinely cited is *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442 (6th Cir. 2009), where two scrap dealers attempted to enjoin enforcement of a Memphis municipal ordinance that limited the manner of payment for scrap metal purchases. Dealers pay for air conditioning coils (a common target for thieves) with a check or money order mailed to a licensed HVAC contractor after a three-day wait.

The Sixth Circuit held that this local ordinance did not violate 31 U.S.C. § 5103; "The requirement to pay by check or money order did not infringe upon federal authority to coin money or on the status of U.S. currency as legal tender because the law did not make the instruments themselves legal tender." *Id*. at 446

Here, NPS creates a surrogate legal tender (i.e., electronic payments) in violation of federal law. Since the decision in *Tenn. Id.*, dealt exclusively with a local ordinance, not the Federal government; it has no persuasive or binding authority.

In NPS's Motion to Dismiss (A 022) NPS cited *Picano v. Emerson*, 353 Fed. Appx. 733, 734 (3d Cir. 2009), an unpublished, not-precedential opinion, wherein the plaintiff alleged the Borough of Emerson, a New Jersey municipal Corporation, violated his constitutional rights when the Borough enacted and enforced an ordinance requiring residents to pay their property taxes by check or money order, rather than in cash. The Court held: "[T]o sustain a § 1983 action for the violation of a statutory right, a plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs … § 5103 did not create [] such a right." (internal citation omitted).

Here, Ms. Stover is not claiming to be part of a protected class, and the Borough of Emerson, an incorporated municipality, is not subject to the APA (that confers standing).

Another case cited in the Defendants' Motion to Dismiss (A 022), *Erdberg v. On Line Info. Servs.*, 2013 U.S. Dist. LEXIS 145760 (N.D. Ala. 1973), is distinguishable since the plaintiff alleged a stand-alone "Federal Preemption of Legal Tender" (count three) that the court ruled meritless since 5103 doesn't create

a cause of action, ruling "a civil cause of action for a violation of the Coinage Act is questionable." *Id*. at *14.

None of the cases the Northern District Court of Alabama cited in its decision refer to the obligations of the U.S. Government or illegal agency conduct under the APA. This case is also inapposite since the defendant in that case is a corporation and not a federal agency.

Congress created a statutory right and entitlement conferring standing to sue. This Court must not be misled by cases such as *Picano, Tenn., and Erdberg* (*supra*) since these cases are against private companies or municipal entities, not federal government defendants. These private entities are not governed by the APA or 31 U.S.C. § 5103. Once again, this is a case of first impression since no U.S. government agency has ever had the gall to deny its own money. The Court must not be misled by references to case law supporting private entities.

### 2. Ms. Stover's Prospective Harm as Pled Entitles Her to Declaratory and Quasi-Injunctive Relief

Ms. Stover pled she still desires to visit the Franklin D Roosevelt Home:

> Toby Stover still wants to visit Hyde Park whenever she wants but will not do so if she continues to be denied her right to tender anything other than legal U.S. Currency. According to its website, entrance is still only payable by "Credit/Debit only" by tendering cash, and cash only.

(A 006.)

Plaintiff is entitled to declaratory relief as *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011) is satisfied to establish standing since she "show[s] [s]he is suffering an ongoing injury or faces an immediate threat of injury" due to her continued desire to visit that continues to be denied based on Defendants' cashless policy.

As pleaded, since Ms. Stover is still denied entry, she satisfies the requirements under *Dearth* (*supra*) for declaratory relief.

### D. Defendants' Motion to Dismiss under Rule 12(b) Should Have Been denied since Plaintiff Pled a Valid Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 (1957)). A claim need not be more likely to succeed than to fail but must merely "raise a right to relief above the speculative level." *Id.* When ruling on a 12(b)(6) motion, a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the

benefit of all inferences that can be derived from the facts alleged.'" *Elec. Privacy Info. Ctr. v. IRS*, 261 F.Supp.3d 1, 5 (D.D.C. 2017). "In passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### 1. Ms. Stover Exceeded the Standard to Survive a Motion to Dismiss

Ms. Stover exceeded the necessary standard to survive a motion to dismiss since she plausibly alleges a continuing violation of the APA, 5 U.S.C. § 706(2)(A*)*, in that NPS Cashless is contrary to law – the Legal Tender Statute, 31 U.S.C. § 5103. Her 1st Amended Complaint (A 001-012) read in the light most favorable to the Plaintiff – as required under Rule 12(b)(1) – alleges a particularized injury.

At the pleading stage, Ms. Stover was not required to prove all elements of her case to survive a motion to dismiss. Rather, Rule 12(b)(6) requires the reviewing court to treat the complaint's factual allegations as true and must grant the benefit of all inferences that can be derived from the facts alleged. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 357 U.S. App. D.C. 35, 38 (D.C. Cir. 2003). At the preliminary pleading stage, the District Court must "construe the complaint liberally," to grant the plaintiff "the benefit of all inferences that can be

derived from the facts alleged." *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 436 (D.C. Cir. 2020). Plaintiff's 1st Amended Complaint satisfied all pleading requirements.

### 2. The Court Failed to Obey its Duty to Correctly Construe Pleadings

In evaluating a Rule 12(b)(1) motion, a court must "assume the truth of all material factual allegations in the complaint" while also "granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Ms. Stover is entitled to declaratory relief since she "show[s] [s]he is suffering an ongoing injury…" *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011), due to her continued desire to visit with cash in hand that continues to be denied based on Defendants' no-cash policy.

The District Court ignores the fact that Ms. Stover is still denied entry with cash in hand. The District Court was quick to point out, "Nonspecific allegations of the potential for future harm do not suffice: 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury." *Lujan*, 504 U.S. at 564." (A 064.)

**E. The Issues Presented for Review Affirm the need for Vacatur and Remand**

I. Based on the foregoing, the National Park Service's no-cash policy at approximately 30 venues unlawfully demonetizes U.S. currency and violates the Administrative Procedure Act for being contrary to law (31 U.S.C. § 5103 Legal Tender Statute).

II. As proved above, the District Court wrongly dismissed Ms. Stover's case against the National Park Service by claiming, without sufficient justification, that she lacked standing.

## CONCLUSION

Electronic payments through an intermediary must not be permitted to supplant the power of the U.S. Dollar – particularly when tendered to the very government itself. Defendants would rather genuflect to an expensive banking system that charges both parties a premium for electronic payment processing, than obey the law and accept the U.S. Dollar at par value. Under the Administrative Procedure Act, this Court has the authority to interpret the controlling constitutional and statutory provisions, with power to set aside unlawful agency action.

(A 002 at ¶2.)

When the District Court held Ms. Stover lacked standing, it erred by creating a novel interpretation of the Legal Tender statute – one that replaces lawful U.S. currency with electronic payment. The District Court gave the NPS leeway to continue to violate federal law.

The U.S. Constitution authorizes the establishment of currency. The federal government determines what qualifies as exclusive legal tender: It then coins and prints money that the U.S. Government refuses to accept. An attorney employed by the federal government fights Ms. Stover. A federal judge blamed her for the U.S. Government's wrong and dismissed the case. The federal government's demonetization and devaluation of its U.S. Dollar is a dangerous gamble. At this point, only this Court can right this wrong.

For the foregoing reasons, the District Court's decision dismissing Ms. Stover's claims should be reversed, and this case should be remanded for further proceedings. In the alternative, this Court should declare the National Park Service's no-cash policy unlawful and set it aside.

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument.


Respectfully submitted,                    Dated: January 28, 2026


/s/ Ray L. Flores II
**Law Offices of Ray L. Flores II**
**11622 El Camino Real Suite 100**
**San Diego, CA 92130**
**Phone (858) 367-0397**
**Fax    (888) 336-4037**
**rayfloreslaw@gmail.com**
**CA State Bar No.: 233643**
**DC Circuit Bar No.: 64657**


## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this

brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R.

App. P. 32(f), the brief contains 8,719 words.

2. The brief has been prepared in proportionally spaced typeface using

Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App.

P. 32(g)(1), the undersigned has relied upon the word count feature of this word

processing system in preparing this certificate.


January 28, 2026                              /s/ Ray L. Flores II
                                             Ray L. Flores II